*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1344**

In the Matter of the Risk Level Determination of S. P. M.

**Filed March 23, 2015
Affirmed
Halbrooks, Judge**

Minnesota Department of Corrections
File No. OAH 153-1100-31370

Lori Swanson, Attorney General, John D. Gross, Assistant Attorney General, St. Paul, Minnesota (for relator)

S.P.M., Owatonna, Minnesota (pro se respondent)

Considered and decided by Halbrooks, Presiding Judge; Johnson, Judge; and Larkin, Judge.

**UNPUBLISHED OPINION**

**HALBROOKS**, Judge

In this certiorari appeal, relator end-of-confinement review committee (ECRC) challenges the administrative law judge's (ALJ) determination that ECRC erred when it assigned a risk-level III to respondent S.P.M. We affirm the ALJ's final decision.

**FACTS**

In 2010, at the age of 24, S.P.M. was charged with first-degree criminal sexual conduct for having sexual intercourse with a 14-year-old minor. S.P.M. pleaded guilty to

third-degree criminal sexual conduct, and the district court placed him on probation. While on probation, S.P.M. was admitted to chemical-dependency and sex-offender treatment programs. S.P.M. was discharged from one residential treatment program because he formed an intimate relationship with another patient. On multiple occasions, S.P.M. admitted to his therapists, doctors, and probation officer that he heard voices telling him to kill himself and others. At one point, S.P.M. was hospitalized for suicidal and homicidal thoughts. At another point, S.P.M. was terminated from sex-offender treatment due to significant mental-health concerns.

In 2012, S.P.M. called his therapist and reported that he had taken "a bunch of pills." The police conducted a welfare check and found the following items in S.P.M.'s apartment:

- two black masks, leather gloves, wrist bands, a penis-fetish device, cords, ropes, lighter fluid, epoxy glue, a knife, wire, and medical face masks;
- a rope fashioned into a noose hanging in the doorway;
- unassembled materials to make a bomb;
- covers for two pornographic DVDs;
- photographs of S.P.M. binding and gagging a woman and using a knife while performing sexual acts on the woman;
- photographs of S.P.M. with a minor female touching the breast of another minor female over her clothes;
- a collection of books about serial killers; and
- a collection of journals containing S.P.M.'s writings and drawings, which included violent and sexual topics.

A probation-violation report was filed, stating that S.P.M. used marijuana, failed to remain law-abiding, possessed a dangerous weapon, failed to complete sex-offender treatment, used and possessed sexually explicit material, and had contact with minors. The district court revoked his probation and executed his 48-month sentence.

2

A psychiatric intake evaluation resulted in S.P.M.'s transfer to a mental-health unit at another correctional facility. After being transferred back to the first correctional facility, S.P.M. enrolled in sex-offender and chemical-dependency treatment but was later discharged because he refused to manage his mental health and take responsibility for his behaviors. S.P.M. was then transferred to another facility where he continued to receive mental-health services.

In anticipation of S.P.M.'s release from prison, a psychologist employed by the department of corrections submitted a risk-assessment report and recommendation for S.P.M.'s end-of-confinement review. Based on S.P.M.'s score on the Minnesota Sex Offender Screening Tool, S.P.M. was presumptively assigned a risk-level I. But the psychologist recommended that ECRC increase S.P.M.'s risk level to III based on application of special concern 9. Following its meeting on March 10, 2014, ECRC unanimously assigned S.P.M. a risk-level III, citing application of special concern 9 and concerns for his mental health, which "warrant the most broad notification to the community regarding possible risk of reoffending." S.P.M. sought administrative review of ECRC's risk assessment.

At the administrative-review hearing, the ALJ heard testimony from both S.P.M. and the psychologist who conducted the risk-assessment report. The ALJ issued an order concluding that ECRC erred by applying special concern 9 to increase S.P.M.'s presumptive risk-level I to risk-level III. The ALJ then determined that risk-level II is appropriate because S.P.M.'s "characteristics, specifically his mental health, history of

medication non-compliance, and his use of marijuana," justified application of special concerns 2 and 4.

ECRC petitioned for writ of certiorari, and we granted certiorari review. S.P.M. failed to respond within the required time period. Pursuant to Minn. R. Civ. App. P. 142.03, we proceed on the merits.

## D E C I S I O N

### Risk-Level-Assignment Process

The risk-level-assignment process for a sex offender nearing the end of his confinement is governed by Minn. Stat. § 244.052 (2014). The statute provides that the commissioner of corrections shall establish an ECRC at each state correctional facility. *Id.*, subd. 3(a). The ECRC "shall assess on a case-by-case basis the public risk posed by predatory offenders who are about to be released from confinement." *Id.* The ECRC must use the risk factors described in the statute and the risk-assessment scale developed by the commissioner of corrections when making its risk-level determination. *Id.*, subd. 3(d)(i). The statutory risk factors include (1) "the seriousness of the offense should the offender reoffend"; (2) "the offender's prior offense history"; (3) "the offender's characteristics," including "the offender's response to prior treatment efforts" and "the offender's history of substance abuse"; (4) "the availability of community supports to the offender"; (5) "whether the offender has indicated or credible evidence in the record indicates that the offender will reoffend if released into the community"; and (6) whether the offender has a physical condition that minimizes the risk of re-offending. *Id.*, subd. 3(g).

4

The statutory risk factors and the risk-assessment scale generate a score, placing the offender in a presumptive risk-level range of I, II, or III. "A risk-level-I designation indicates that an offender has a low risk of reoffending, a risk-level-II designation indicates a moderate risk of reoffending, and a risk-level-III designation indicates a high risk of reoffending." *In re Risk Level Determination of S.S.*, 726 N.W.2d 121, 124 (Minn. App. 2007), *review denied* (Minn. Mar. 28, 2007). An offender's risk level dictates how much information about the offender is disclosed to the public. *See* Minn. Stat. § 244.052, subd. 4(b)(1)-(3), 4b (setting the disclosure requirements based on risk levels); *see also In re Risk Level Determination of R.B.P.*, 640 N.W.2d 351, 354 (Minn. App. 2002) (describing the statute's guidelines on disclosure of information for each risk level), *review denied* (Minn. May 14, 2002).

Pursuant to its statutory authority under section 244.052, subdivision 2, the department of corrections created a list of "special concerns" to complement its risk-assessment scale. The special concerns allow for an upward adjustment to an offender's presumptive risk level. *S.S.*, 726 N.W.2d at 125. The special concerns relevant here are:

- Special concern 2: Two or more unsuccessful chemical-dependency treatment interventions;
- Special concern 4: A history of prior supervision failures; and
- Special concern 9: The nature of the offender's victim pool suggests a need for broader notification of the public.

"Under the Sex Offender Community Notification Act, the [ECRC], when it finds and documents special concerns, has the authority to exercise its discretion and assign the appropriate risk level for an offender notwithstanding the presumptive risk level indicated by the Sex Offender Screening Tool." *R.B.P.*, 640 N.W.2d at 357.

An offender assigned a risk-level II or III may seek administrative review of ECRC's risk assessment. Minn. Stat. § 244.052, subd. 6. If review is sought, the ALJ must hold a hearing and the offender has the "right to be present, to present evidence in support of the offender's position, to call supporting witnesses, and to cross-examine witnesses testifying in support of the committee's determination." *Id.*, subd. 6(a)-(b). At the hearing, the offender has "the burden of proof to show, by a preponderance of the evidence, that [ECRC's] risk assessment determination was erroneous." *Id.*, subd. 6(b). If the offender meets his burden, the ALJ makes an independent risk-level determination. *Id.*, subd. 6(c).

**Standard of Review**

Minnesota law requires that the ALJ engage in a two-step process: first, to determine whether ECRC's determination was erroneous, and second, if ECRC's decision was erroneous, to make its own determination of the offender's appropriate risk level. *Id.* The statute provides that the ALJ's "decision shall be final." *Id.*

Because the legislature created an administrative-review process and designated that the final administrative decision rests with the ALJ, separation-of-powers principles require that we refrain from intrusive review of the ALJ's decision. *See Dokmo v. Indep. Sch. Dist. No. 11, Anoka-Hennepin*, 459 N.W.2d 671, 674 (Minn. 1990). The statute specifies that the administrative-review hearing is subject to the contested-case provisions of Minnesota Statutes chapter 14 governing administrative proceedings. Minn. Stat. § 244.052, subd. 6(d). An appeal of a final administrative decision in a contested case may be made to this court by writ of certiorari. Minn. Stat. § 14.63 (2014). "Review by

6

certiorari is limited to an inspection of the record of the [administrative] tribunal" and we are "necessarily confined to [determine] . . . whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it." *Dietz v. Dodge Cnty.*, 487 N.W.2d 237, 239 (Minn. 1992) (quotation omitted). "Because it mandates nonintrusive and expedient judicial review, certiorari is compatible with the maintenance of fundamental separation of power principles, and thus is a particularly appropriate method of limiting and coordinating judicial review" of administrative decisions. *Id.* (footnote omitted).

Applying this deferential standard of review, we first address whether the ALJ erred by finding that ECRC's determination was erroneous. If the ALJ did not err by finding ECRC's determination to be erroneous, we then review whether the ALJ's risk-level determination (1) violates a constitutional provision; (2) exceeds the agency's statutory authority; (3) was made upon unlawful procedure; (4) reflects an error of law; (5) is "unsupported by substantial evidence"; or (6) is "arbitrary or capricious." Minn. Stat. § 14.69 (2014).

**ALJ's Determination that ECRC's Risk-Level Assignment Was Erroneous**

To review whether the ALJ erred by determining that ECRC erred, we must consider whether the ALJ properly interpreted the language in special concern 9. We give great deference to the ALJ's interpretation of administrative rules and regulations. *St. Otto's Home v. Minn. Dep't of Human Servs.*, 437 N.W.2d 35, 40 (Minn. 1989). But we "may reverse an agency decision if the decision was affected by an error of law." *N.*

7

*States Power Co. v. Minn. Pub. Utils. Comm'n*, 344 N.W.2d 374, 377 (Minn. 1984), *cert. denied*, 467 U.S. 1256 (1984).

Here, ECRC applied special concern 9 and increased S.P.M.'s risk level to III. Special concern 9 states:

> The nature of the offender's victim pool suggests a need for broader notification of the public than that indicated by the risk level associated with the offender's score on the MnSOST-3.1.2.
>
> This includes evidence of a wider victim pool than the MnSOST-3.1.2 takes into account. For example: multiple age ranges, stranger victims, particularly vulnerable victims due to age (preschool or younger, elderly), physically vulnerable victims, developmentally delayed victims, or the presence of victims from uncharged offenses. This also applies if it appears that notification of the community might be a significant deterrent or preventative factor, given the offender's pattern of acquiring victims.

The ALJ noted that S.P.M. only had one prior predatory offense with one victim, and without evidence of any uncharged offenses in the record, the ALJ concluded that S.P.M. did not have enough victims to trigger application of special concern 9. Because the legislature provided that the ALJ makes the final decision in risk-assessment determinations, we conclude that the ALJ did not err in interpreting special concern 9 and finding that it did not apply to S.P.M.'s risk-level assessment.

**ALJ's Risk-Level Determination**

After determining that S.P.M. demonstrated by a preponderance of the evidence that ECRC erred by applying special concern 9, the ALJ determined that special concerns 2 and 4 apply to S.P.M. Special concern 2 relates to S.P.M.'s failed chemical-

dependency-treatment interventions. The record demonstrates that S.P.M. relapsed into drug use and failed multiple treatment programs. Special concern 4 relates to S.P.M.'s history of prior supervision or probation failures. The record shows that S.P.M. violated the conditions of his probation numerous times by using marijuana, having contact with minors, failing to complete sex-offender treatment, and failing to remain law-abiding.

For these reasons, the ALJ assigned a risk-level II to S.P.M. The ALJ explained its reasons for not assigning a risk-level III, noting the lack of multiple sex-offense convictions, the lack of multiple victims, the lack of use of violence, the positive effects of medications on S.P.M., S.P.M.'s commitment to remain abstinent from alcohol and drugs, and the lack of verbal intent to sexually reoffend. We conclude that substantial evidence supports the ALJ's determination that special concerns 2 and 4 apply and that the ALJ's risk-level II assignment to S.P.M. is not unreasonable or arbitrary.

**Affirmed.**