NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-1703                                       Appeals Court

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 291554  vs.  SEX
                OFFENDER REGISTRY BOARD.


                      No. 13-P-1703.

      Suffolk.     November 13, 2014. - March 27, 2015.

         Present:  Green, Wolohojian, & Blake, JJ.


Sex Offender.  Sex Offender Registration and Community
     Notification Act.  Evidence, Sex offender, Expert opinion.
     Witness, Expert.



      Civil action commenced in the Superior Court Department on
April 13, 2011.

      The case was heard by Frances A. McIntyre, J., on a motion
for judgment on the pleadings.


      Xiomara M. Hernández for the plaintiff.
      Thomas M. Doyle for the defendant.


      BLAKE, J.  The plaintiff, John Doe, challenges his final

classification by the Sex Offender Registry Board (board) as a

level three sex offender.  He claims that the board's decision

was not supported by substantial evidence, primarily because the

governing offense involved no physical contact or sexual

component and, apart from that offense, Doe had no prior criminal record. We affirm.

Background. We summarize the facts found by the hearing examiner,[1] supplemented by additional undisputed facts from the record. In October of 2009, Doe responded to a post on a social networking Web site from the twelve year old female victim seeking assistance running away from home. He initiated a series of online communications with her over a period of thirty or so days. In his electronic mail messages (e-mails) to the victim, Doe misrepresented his age as being twenty-five, rather than his actual age of thirty-two. Eventually, Doe arranged to travel from his home State of Virginia to Massachusetts, on a date certain, to pick up the victim, intending to return to Virginia with her by train, subway, and bus. To that end, he purchased one bus ticket in his name and one in that of the victim. He also instructed the victim to bring some money and her Social Security card.

On the morning of the planned meeting, the victim's mother noticed that the victim was acting suspiciously. The mother's boyfriend then searched the victim's computer and discovered her communications with Doe. The police were notified, and after interviewing the victim, they arrested Doe at the train station, shortly before the prearranged meeting. Upon questioning, Doe

---

[1] An evidentiary hearing was held on February 7, 2011.

told the police that he knew the victim was twelve years old; that he planned "to kiss her, lick her, and suck on" her when they returned to Virginia; that he would take photographs of her and post them on a Web site; that he intended to get her to love him; and that he would marry her and have babies with her.

Doe was charged and found guilty of enticement of a child under the age of sixteen (enticement) and attempted kidnapping of a child. He was sentenced to two and one-half years in the house of correction, and five years of probation on and after his committed sentence. Conditions of his probation include sex offender treatment, no access to the Internet or to social networking Web sites, and no unsupervised contact or employment with children under the age of sixteen. Doe has no other criminal record; however, he told the police that "this is the first time" he has "actually followed through with something."

In October of 2010, while still serving his sentence, Doe was notified of the board's preliminary decision to classify him as a level three sex offender. See G. L. c. 6, § 178K. Doe challenged the board's decision, and a de novo hearing was held before a hearing examiner. See G. L. c. 6, § 178L(1)(a). Represented by counsel, Doe requested that he be classified as no higher than a level two sex offender. Unpersuaded, the hearing examiner found that the board had met its burden of proof and ordered Doe to register as a level three sex offender.

Doe filed in Superior Court a complaint for judicial review and then a motion for judgment on the pleadings. A judge denied the motion and affirmed the board's classification of Doe as a level three sex offender.[2] This appeal followed.

The hearing examiner's decision. As required by G. L. c. 6, § 178K(1), the board "has promulgated guidelines 'for determining the level of risk of reoffense and the degree of dangerousness posed to the public'" in connection with a sex offender's classification hearing. Doe, Sex Offender Registry Bd. No. 89230 v. Sex Offender Registry Bd., 452 Mass. 764, 772 (2008). See 803 Code Mass. Regs. § 1.40 (2004). "The guidelines have 'the force of law and must be accorded all the deference due to a statute.'" Smith v. Sex Offender Registry Bd., 65 Mass. App. Ct. 803, 811 (2006), quoting from Massachusetts Fedn. of Teachers v. Board of Educ., 436 Mass. 763, 771 (2002). A hearing examiner has discretion to consider which regulatory factors to apply and how to weigh those factors based on the evidence at the hearing. Id. at 811-813.

Here, the hearing examiner found that several statutory and regulatory factors were applicable to Doe's case, resulting in her finding that he presents a high risk of reoffense and a high degree of dangerousness. First, where the victim is a child,

---

[2] We note that the judgment only stated that Doe's motion for judgment on the pleadings was denied. Ordinarily, such judgments also should affirm the board's classification.

offenders such as Doe "pose a heightened risk to public safety since children normally lack the physical and mental strength to resist an offender." 803 Code Mass. Regs. § 1.40(3) (2002). Next, Doe and the victim were strangers, which presents a heightened risk of reoffense and degree of dangerousness. 803 Code Mass. Regs. § 1.40(7) (2002). Targeting a stranger also increases an offender's pool of potential victims. Ibid. Doe was incarcerated at the time of the classification hearing, which meant there was no evidence regarding his reintegration into the community without committing a subsequent offense.[3] 803 Code Mass. Regs. § 1.40(9)(a) (2002). Lastly, the crimes of which Doe was convicted have been designated to be sex offenses involving a child. See G. L. c. 6, § 178C; 803 Code Mass. Regs. § 1.40(9)(c)(12) (2002).[4]

The hearing examiner also applied two factors in mitigation: that Doe took responsibility for his actions, 803 Code Mass. Regs. § 1.40(9)(c)(13) (2002), and that he will be under probation supervision when released from incarceration,

---

[3] The board is required to begin classification proceedings at least sixty days prior to a sex offender's release from incarceration and must classify the sex offender at least ten days before his earliest possible release date. G. L. c. 6, §§ 178L(1)(a), 178E(a). We accordingly reject Doe's claim that he posed no current risk because of his incarceration. See Doe, Sex Offender Registry Bd. No. 1 v. Sex Offender Registry Bd., 79 Mass. App. Ct. 683, 689 (2011).

[4] Contrary to Doe's contention, the hearing examiner did not consider substance abuse as a factor in Doe's classification.

803 Code Mass. Regs. § 1.40(10) (2002).  Sex offender treatment was not available to Doe at the house of correction.  He did, however, enroll in a cognitive behavior development class, attend Alcoholics Anonymous meetings, and submit to the hearing examiner a comprehensive relapse prevention plan.  While not a substitute for sex-offender-specific treatment, the hearing examiner found Doe's actions to be an encouraging start.

In carefully weighing the factors involved in this case, the hearing examiner found the facts of the offenses to be "extremely aggravating."  In particular, she noted that:  "While I am cognizant that [Doe] is convicted of acts related to only this one incident, and that his actions towards abducting and sexually assaulting the girl were cut short by police intervention, I find his stated intentions and his actions taken towards his goal exceedingly grievous and give them great weight."[5]

Standard of review.  In determining the validity of the board's decision, a reviewing court "must determine whether the decision is supported by substantial evidence."  Doe, Sex Offender Registry Bd. No. 10216 v. Sex Offender Registry Bd., 447 Mass. 779, 787 (2006).  "In reviewing SORB's decisions, we 'give due weight to the experience, technical competence, and

_____

[5] The hearing examiner nevertheless noted that Doe may be a candidate for further administrative review in the future to determine the appropriateness of reclassification.

specialized knowledge of the agency.'" Doe, Sex Offender Registry Bd. No. 205614 v. Sex Offender Registry Bd., 466 Mass. 594, 602 (2013) (Doe No. 205614), quoting from G. L. c. 30A, § 14(7). "A reviewing court will set aside or modify SORB's decision if it was . . . '[a]rbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law.'" Id. at 601-602, quoting from G. L. c. 30A, § 14(7). "It is the province of the board, not this court, to weigh the credibility of the witnesses and to resolve any factual disputes." Doe, Sex Offender Registry Bd. No. 27914 v. Sex Offender Registry Bd., 81 Mass. App. Ct. 610, 618 (2012).

Discussion. On appeal, Doe claims that because there was no physical contact between him and the victim, and no sexual component to the crimes, he should not have been required to register as a level three sex offender. In the alternative, he claims that the hearing examiner failed to properly weigh certain mitigating factors, including his lack of a prior criminal record, and erroneously found that he and the victim were strangers. We address each point in turn.

A. Nature of the governing offenses. The list of predicate offenses under G. L. c. 6, § 178C, include several, like the ones here, that are noncontact offenses. See generally Doe No. 205614, supra at 610 n.13. Doe does not challenge the general inclusion of such crimes within the ambit of the sex

offender registry law.  Rather, his argument seems to center on his claim that the crimes in question were "not sexual in nature," as evidenced by the lack of physical contact between Doe and the victim.  The presence of physical contact between a sex offender and a victim is not a prerequisite to determining if that sex offender acted out of sexual motivation.  Moreover, the crime of enticement does not require physical contact.  See G. L. c. 265, § 26C(b).  Here, Doe's actions and words, individually and collectively, demonstrate that his intentions were sexual in nature.

B.  Application of the guidelines.  Doe claims that the hearing examiner incorrectly found that he and the victim were strangers, and that the corresponding risk factor was thus applied in error.  He also claims that the hearing examiner improperly weighed certain mitigating factors.  For those reasons, he maintains that if he is required to register, he should be classified as a level one offender.  These claims are without merit.

Doe argues that by the time of his arrest, he and the victim were no longer strangers as they had been communicating online for about one month.  This claim fails to account for the undisputed fact that when Doe initiated contact with the victim, she was unknown to him.  This initial contact was the first step in his commission of the crime of enticement.  He then

cultivated a relationship with the victim in furtherance of his criminal plan to take her to Virginia, which actions constituted the basis for his arrest and subsequent conviction of enticement.

The hearing examiner also explicitly weighed Doe's lack of a prior criminal record, and appropriately credited him for his expected supervision by the probation department upon release and for having a relapse prevention plan in place. The weight that she afforded each of those factors was hers to determine, and fell within the bounds of her discretion. See Smith v. Sex Offender Registry Bd., 65 Mass. App. Ct. at 811.

We acknowledge, as noted by the dissent, post at        , that no expert testimony was presented regarding the likelihood that Doe would reoffend. However, the statute contains no requirement, nor is any requirement implied in any previously decided case, that expert testimony be presented on the subject of the likelihood to reoffend. By establishing factors to be considered by the hearing examiner, the Legislature has furnished guidance on its view of the relevant considerations and requirements, committing to the board considerable discretion in the specific application of those factors to

individual sex offenders.  Greater quantification of specific risk, even if possible to imagine, is not required.[6]

Conclusion.  Based on the evidence presented, the risk factors involved, and the deference we must afford to the board, the hearing examiner's decision was supported by substantial evidence, was not arbitrary or capricious, and was in accordance with the law.

Judgment affirmed.[7]

---

[6] We disagree with the dissent's suggestion, post at      , that arbitrary applications of the factors will be immune from review.

[7] See note 2, supra.

WOLOHOJIAN, J., dissenting. When creating the sex offender registration scheme, the Legislature determined that sex offenders should be classified by the Sex Offender Registry Board (board) into three levels depending on whether they present a low, moderate, or high risk of reoffense. Although these terms are undefined, they must remain connected to our ordinary understanding of the quantitative concepts underlying them. Thus, a low risk of reoffense is "not merely a hypothetical or speculative potential risk." Doe, Sex Offender Registry Bd. No. 24341 v. Sex Offender Registry Bd., 74 Mass. App. Ct. 383, 388 (2009) (Doe No. 24341). "Rather, it is a risk that is 'cognizable' -- i.e., 'perceptible'; '[c]apable of being known, perceived, or apprehended by the senses or intellect.'" L.L. v. Commonwealth, 470 Mass. 169, 179 (2014) (footnote omitted). A moderate level of risk must, by virtue of logic, common sense, and fairness, be something quantifiably more than a low level of risk. Likewise, a high level of risk must, for the same reasons, be appreciably greater than a moderate one. The inquiry is prognostic; the hearing examiner is required to assess not only what (i.e., another sex offense) might happen in the future, but also its quantifiable likelihood (i.e., low, moderate, or high) of occurring. Because human behavior is unpredictable, and predictions of future behavior are inherently

difficult and complex, both prongs of the inquiry must rest on something other than guesswork, conjecture, fear, or surmise.

This is not to say that the Legislature intended the three levels of classification to be a purely statistical analysis. The hearing examiner is entitled to, and should, examine qualitative factors that may also bear on the person's future risk of reoffense. There must, however, be an objective quantitative basis for the particular classification. Otherwise, if we allow the terms "low," "moderate," and "high" to become separated from their quantitative core, a person could be classified as a level three (high risk) sex offender regardless of whether he presents a five percent risk of committing another sex offense or a seventy-five percent risk. This is unacceptable.

I respectfully dissent because the board did not prove, by a preponderance of the evidence, the quantum of risk Doe presents of reoffense. We do not know even in a general way, let alone with any precision -- nor did the hearing examiner find -- where on the spectrum of risk (from zero to one hundred percent) the plaintiff, John Doe, falls. Nor did the hearing examiner explain why she found Doe's risk of reoffense to be high rather than moderate. Indeed, the board concedes that it cannot explain why Doe presents a high risk as opposed to a moderate risk. It argues, instead, that the discretion afforded

to the hearing examiner permitted her to classify Doe as either a level two (moderate risk) or a level three, and that neither classification would have been error based on the facts. If accepted, this argument would essentially eliminate the very structure of the three-tier classification system, which is premised on distinct and different levels of risk. It would also make even arbitrary decisions of hearing examiners unreviewable.

It is not enough to establish that a person presents some risk of reoffense. To avoid arbitrary and capricious application of the law, one "must be able to [articulate] and [describe] based on affirmative evidence," why and how a person presents a particular risk of reoffense (whether low, moderate, or high) as opposed to any other." Ibid. See Doe No. 24341, supra at 387-388. The terms low, moderate, and high cannot and should not be interpreted so amorphously as to permit arbitrary classification. The board was required to prove by a preponderance of the evidence that Doe presents a cognizable, perceptible risk of reoffense that is greater than low, and also greater than moderate. This it did not do. There was, for example, no expert evidence presented on the risk of reoffense by a person who, like Doe, has no criminal history or history of sex offenses. We are left to guess what predictive value the characteristics of Doe's acts (while serious) might have on the

quantum of risk Doe presents in the future.  The record contains no empirical or other scientific information or data concerning the recidivism rates for a person who has committed acts of the nature at issue here.  And it already has been noted that "there is reason for some concern as to whether the guidelines [upon which the board relies] continue to reflect accurately the current state of scientific knowledge."  Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 116 (2014).

For these reasons, I would vacate the denial of Doe's motion for judgment on the pleadings and remand the matter to the hearing examiner for further proceedings to determine Doe's level of risk of reoffense based on affirmative evidence.