Kane, Robert J., J.
This case brings before this court the Sexual Offender Registry Board’s (“SORB”) classification of John Doe as a level 3 sexual offender pursuant to G.L.c. 6, §§178K and 178L, as implemented by 803 Code Mass. Regs. §§100-41 (2013). Review of the regulatory system that shaped this classification and the decision itself reveals the continuing failure of SORB’s administrative approach to provide a rational and objective framework for evaluating the recidivism risk of sexual offenders.
Lacking the fabric of reasoned analysis and articulation, the decision arbitrarily subjected Doe to the prejudice of Internet publication of his face and other particulars of his human identity. Publication of his sexual dangerousness through the Internet and other outlets will cause Doe anxiety and will reduce his ability to secure shelter, work, and human dignity. [1]
For reasons delineated in this decision, this court determines that SORB’s failure to implement the legislatively mandated guidelines that define the intrinsic and comparative meaning of high, moderate, and low recidivism risks constitutes an arbitrary and capricious omission. This absence compromises the judicial duty to determine whether the burden of proof has been satisfied, and to determine whether the classification decision violates criteria set forth in G.L.c. 30A, §14.
The court commences its analysis by reviewing the legislative and regulatory framework surrounding a classification decision.
BACKGROUND
I. SORB’S CLASSIFICATION PROCESS
A. GENERAL LAWS CHAPTER 6, SECTION 178K
In enacting G.L.c. 6, §178K, the legislature directed the Sex Offender Registry Board to “promulgate guidelines for determining the level of risk of reoffense and the degree of dangerousness posed to the public . . . and shall provide for three levels of notification depending on such risk of reoffense and the degree of dangerousness posed to the public . . .” G.L.c. 6, §178K(1). The statute, as amended, specified six “criminal history factors indicative of a high risk of reoffense and degree of dangerousness.” G.L.c. 6, §178K(l)(a). It also listed other “factors” relevant to determining the risk of reoffense or the degree of dangerousness. G.L.c. 6, §178K(l)(a)-(l).
As to the three classification levels, the statute instructed SORB that: (1) where “the risk of reoffense is low and the degree of dangerousness posed to the public is not such that a public safety interest is served by public availability, it shall give a level 1 designation to the sex offender” G.L.c. 6, §1781K(2)(a); (2) where “the risk of reoffense is moderate and the degree of dangerousness posed to the public is such that a public safety interest is served by public availability of registration information, it shall give a level 2 designation to the sexual offender,” G.L.c. 6, §178K(2)(b); and, (3) where “the risk of reoffense is high and the degree of dangerousness posed to the public is such that a substantial public safety interest is served by active dissemination, it shall give a level 3 designation to the sex offender,” G.L.c. 6, §178K(2)(c). The statute further instructs SORB to develop guidelines on the dissemination of sex offender classifications. G.L.c. 6, *632 §178K(1). Under G.L.c. 6, §178D, the statute provides for SORB to make available for inspection on the Internet classification information of level 2 and level 3 sexual offenders. G.L.c. 6, §178D(e). The Internet database includes the offender’s name, home address, work address, and a photograph of the sexual offender. G.L.c. 6, §178D(e)(i)-(viiii).
B. 803 Code Mass.Regs. §§100-41
The governing statute, G.L.c. 6, §178K, requires both the promulgation of guidelines and the use of factors for classifying sexual offenders. Through its promulgation of regulations, SORB explained the relationship of each “factor” to the risk of recidivism and the risk of harm. SORB failed to develop regulations providing guidance on the differentiation existing between a level 1, level 2, and level 3 classification. The regulations failed to specify the definition of high, moderate, or low recidivism risk. The regulations lacked any quantifiable or descriptive criteria for determining a high risk versus a moderate risk versus a low risk.
Indeed, SORB delineated a two-step administrative procedure for classifying sexual offenders. See 803 Code Mass. Regs. §§1.06(5), 1.38(3) (2013). Under the first step, SORB, using a “Classification Worksheet,” assembles a recommended classification. 803 Code Mass. Regs. §§1.06(5), 1.38(3) (2013). Using the Classification Worksheet, SORB applies “policies, procedures, protocols and objective standards” in order to establish the sexual offender’s initial classification recommendation. 803 Code Mass.Regs. §1.38(3) (2013).
If the sexual offender disagrees with the initial classification, he can request a de novo hearing in front of an impartial hearing examiner. 803 Code Mass.Regs. §§1.07, 1.10, 1.38(4) (2013). At the de novo hearing, the hearing examiner would not be bound by the initial decision that derived from application of the Classification Worksheet. 803 Code Mass.Regs. §1.38(4) (2013). Instead, the hearing examiner would determine the classification level based on the “totality of all the relevant evidence introduced at the offender’s individualized hearing.” Id. Here, SORB bears the burden of justifying the appropriateness of its classification determination by a preponderance of the evidence.[2] 803 Code Mass.Regs. §1.10(1) (2012). See John Doe, Sex Offender Registry Bd. No. 8725 v. Sex Offender Registry Bd., 450 Mass. 780, 782 n.4 (2008).
II. DOE’S CLASSIFICATION
A. DOE’S SEXUAL OFFENSES
The sexual offenses occurred on April 24, 2013. On that night, the victim, age twelve, went to a friend’s aunt’s home. The aunt lived with Doe. That night, the power in the home went out and the two girls, instead of sleeping on a couch, slept in the room occupied by the aunt and Doe. As the room was without heat, Doe invited the girls to sleep in the bed.
After going to sleep, the victim woke when she felt someone touching her. Doe had his hand down the front of her pants and inside of her underwear. According to the victim, Doe put his finger inside of her vagina. She told him to stop and pushed it away. Doe placed his hand up the child’s shirt and began to “grab and squeeze her boobs.” He pushed his “private area” up against her buttocks.
The victim left the bed and went to the bathroom, where she stayed for some time trying to calm herself. The next morning, the aunt found the victim crying and asked her what was wrong. Doe intervened suggesting that the victim had a bad dream. Later, Doe asked the child not to tell anyone because if the police got involved, Doe would go to jail and be unable to see his children. The victim asked Doe to take her home; he refused.
B. DOE’S GUILTY PLEA AND PRIOR OFFENSES
Doe eventually pleaded guilty to two counts of indecent assault and battery on a child under the age of fourteen and was sentenced to an eighteen-month sentence. This House of Correction sentence was Doe’s first term of imprisonment.
At the time of his initial classification, Doe was 41 years old. Doe’s registration and classification as a sexual offender were mandated by the offense that he pleaded guilty to. Prior to his guilty pleas on the two indecent assault and battery complaints, both arising out of one incident, Doe had never been charged with or convicted of any sexual offense. Further, the record does not reveal any instance in which suspicion was cast upon Doe for the commission of any sexual act or possession of any illicit sexual materials.
Doe had been convicted in 2001 and 2012 for assault and battery. The 2001 assault and battery involved a charge of assault and battery upon a police officer. The 2012 charge of assault and battery involved an assault and battery upon a female who had resided with Doe. At the time of Doe’s commission of the indecent assault and battery offenses, Doe was under probation supervision for his assault and battery conviction.
C. DOE’S CLASSIFICATION WORKSHEET
The Classification Worksheet is comprised of two numbered pages. On page one, Section A — Criminal History, the only sub-categories that bore any marks were the ones next to indecent assault and battery on a child under 14 and a non-sexual violent offense. The succeeding section, entitled Section B — Classification Factors Used in Determining Risk Range Base, had one marking of “1" next to ’’[one] or more convictions or adjudications for a sex offense involving a child or a sexually violent offense." Under Section C — Risk Range, Doe was listed as having a moderate to high risk range. All boxes under Section D — Duty to Register, were checked, including one that indicated that the “Offender currently presents some risk to reoffend *633 and a degree of dangerousness.” In Section E — Factors That May Increase Risk of Reoffense, a mark was filled next to “Extrafamilial Victim,” as well as “Multiple sexual acts during a single episode,” “Penetration,” “Vaginal (with finger),” and ‘Touching under clothes,” as well as the age and sex of the victim. The Classification Worksheet also reflected that Doe had gone through two probation violation proceedings and had committed the current crime while on probation. This section noted that Doe was 40 at the time he committed his first sexual offense. There were no markings under Section G — Factors that May Decrease Risk of Reoffense and/or Dangerousness. Based on the above analysis, the Board member recommended that Doe be classified as a level 3 sex offender.
D. DOE’S HEARING
Doe appealed. In advance of the hearing, Doe’s lawyer filed a brief. The brief cited studies that showed low recidivism rates for sexual offenders and indicated that stability, social support, steady employment and education constitute factors decreasing recidivism.
The hearing officer did not mention or address the Classification Worksheet. He failed to respond to or comment upon Doe’s reference to factors involved in recidivism or the low recidivism rate attributable to sexual offenders.
The hearing officer enigmatically stated that the decision did not derive from a “cumulative analysis of the factors present but rather a qualitative analysis of the particular facts of an offender’s history and personal situation.” In determining that Doe had a high recidivism risk, the hearing examiner referenced, among other factors: (1) 803 Code Mass.Regs. §1.40(9) (c)(5) (2013) — Offense committed while under probation supervision; (2) 803 Code Mass.Regs. §1.40(7) (2013) — Extra-familial victim; (3) 803 Code Mass.Regs. §1.40(9)(c)(3) (2013) — Pre-pubescent child victim; and, (4) 803 Code Mass.Regs. §1.40(9)(c)(l) (2013) — Commission of offense in public place. Of the cited factors supporting a level 3 classification, only one factor fit any of the six statutorily identified factors indicative of a high risk of reoffense.[3]
The hearing examiner noted the following factors as decreasing Doe’s recidivism risk: (1) 803 Code Mass.Regs. §1.40(19) (2013) — Offender’s adjustment to incarceration; and, (2) 803 Code Mass.Regs. §1.40(12) (2013) — Presence of positive and supportive environment. As to the first factor, the hearing examiner noted that Doe’s only infraction while incarcerated consisted of being out of place. Doe’s counsel explained this infraction at the hearing, where he stated that Doe had been improperly placed in general population where he had been harassed because of his sexual offense. Because of the persistent harassment, Doe had refused to return to his cell. A hearing was held and he was sentenced to solitary confinement. While he was in solitary confinement, correctional staff conducted an investigation into Doe’s assignment to general population that resulted in Doe’s transfer to protective custody.
The hearing examiner also noted that while incarcerated, Doe had participated in anger management, compulsive behavior, and substance abuse programs. He pointed out that Doe had attended sexual offender treatment programs starting on December 24, 2013, and subsequently attended sessions on January 7, 2014, and March 18, 2014. He noted that there was no information regarding his treatment progress or current participation.
The hearing examiner’s decision spanned fifteen pages, the first thirteen of which summarized Doe’s background. In less than a single-page at the end of the decision, the hearing examiner articulated his basis for classifying Doe as having a high recidivism rate. In that brief synopsis, the hearing examiner noted that the “potential for harm could be significant in light of the petitioner’s impulsive and aggressive behavior.”
He never articulated a standard or criteria governing the classification decision, the weight he attached to the factors supporting or mitigating Doe’s recidivism risk, or how he objectively determined that Doe posed a high recidivism risk. Nothing in his analysis suggested that his classification decision derived from an objective measurement or an accredited risk assessment instrument. Nothing in the decision explained how he had differentiated Doe’s high risk of recidivism from a moderate risk or a low risk. The hearing examiner elided a thorough reasoning process in favor of reiterating factors that positively related to the calculation of Doe’s recidivism risk.
Despite Doe’s counsel’s reference to recidivism studies, the hearing examiner omitted any discussion or analysis of studies indicating the degree of influence positive risk factors may have to recidivism. Both the regulations and the hearing examiner’s decision omit any references to studies conducted by Karl Hanson, prominently cited in SORB’s regulations as to what factors contribute to a high recidivism rate. See Harris & Hanson, Sex Offender Recidivism; A Simple Question, Public Safety and Emergency Preparedness Canada, 2004-03; Hanson & Morton-Bourgon, The Characteristics of Persistent Sexual Offenders: A Meta-Analysis of Recidivism Studies, Journal of Consulting in Clinical Psychology, Vol. 3373, 2005. Nor did the hearing examiner mention in his analysis any literature indicating that an inaccurate classification decision can increase an offender’s recidivism risk. See Melissa Hamilton, Public Safety, Individual Liberty, and Suspect Science: Future Dangerousness Assessments and Sex Offender Laws, 83 Temp. L. Rev. 697 (Spring, 2011).
DISCUSSION
“A properly promulgated regulation ‘has the force of law. .. and must be accorded all the deference due *634 to a statute.’ ” Massachusetts Fed’n of Teachers v. Bd. of Educ., 436 Mass. 763, 771 (2002), quoting Borden, Inc. v. Comm’r of Pub. Health, 388 Mass. 707, 723 (1983). Deference derives from the understanding that “(administrative agencies possess expertise in their areas of specialization ...” Id. at 772. Deference also acknowledges that the agency could well be privy to legislative facts which it considered in making its regulation. Id. It has been said that this concept of deference confers upon the administrative agency “a wide range of discretion in establishing the parameters of its authority pursuant to the enabling legislation.” Id. at 774, quoting Levy v. Ed. of Registration & Discipline in Med., 378 Mass. 519, 525 (1979). Deference is particularly appropriate where the statute “in question involve[s] an explicit, broad grant of rule-making authority.” Goldberg v. Bd. of Health of Granby, 444 Mass. 627, 634 (2005).
Additionally, special deference is due to an “agency’s interpretation of its own regulation and [a court will] ‘only disturb’ the agency’s interpretation if it is ‘patently wrong, unreasonable, arbitrary, whimsical, or capricious.’ ” Id. at 636, quoting TBI, Inc. v. Bd. of Health of North Andover, 431 Mass. 9, 17 (2000), and Brookline v. Comm’r of the Dep’t of Envtl. Quality Eng’g, 398 Mass. 404, 414 (1986). An agency action assumes an arbitrary and capricious character “when it lacks any rational explanation that reasonable persons might support.” City of Cambridge v. Civil Serv. Comm’n, 43 Mass.App.Ct. 300, 303 (1997). An administrative agency’s action is arbitrary and capricious the minute its action fails to be in concert with the legislative mandate. Long v. Comm’r of Pub. Safety, 26 Mass.App.Ct. 61, 65 (1988).
In enacting G.L.c. 6, §178K, the Massachusetts legislature created SORB, mandating that it “promulgate guidelines for determining the level of risk of reoffense ...” In G.L.c. 6, §17 8K( 1) (a)-(l), the statute separately lists factors relevant to the risk of reoffense that SORB should consider when developing guidelines for determining an offender’s risk of reoffense. “The statute sets forth a nonexhaustive list of factors to consider, G.L.c. 6, § 178K( 1) (a)-(l), which the regulations augment by formulating specific guidelines for the application of each factor.” John Doe, Sex Offender Registry Bd. No. 205614 v. Sex Offender Registry Bd., 466 Mass. 594, 596 (2013). The guidelines that SORB has adopted “describe the manner in which SORB is to apply twenty-four factors increasing or decreasing risk, which are derived from the factors enumerated in the statute.” John Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 105 (2014). The guidelines are promulgated in SORB’s regulations at 803 Code Mass.Regs. §§1.38-1.40 (2013).
Guidelines serve as mechanisms specifying the meaning of more general terms. See Doe No. 205614, 466 Mass. at 597 (‘The guidelines provide that ‘the definitions, explanations, principles, and authorities contained in these Factors shall guide the Hearing Examiner in reaching a Final Classification decision’ ”); Commonwealth v. Trumble, 396 Mass. 81, 89 (1985) (guidelines concerning how the police were to conduct drunk driving checkpoints); Crowe v. Fong, 45 Mass.App.Ct. 673, 677 (1998) (child support guidelines); Commonwealth v. Lally, 55 Mass.App.Ct. 601, 603 (1992) (probation conditions). These instructions on the administration of authority serve to limit the exercise of subjective judgment and seek to prevent the arbitrary exercise of public authority. Trumble, 396 Mass. at 89.
Though the initial classification is made pursuant to an objective, two-page, point-based Classification Worksheet, the second stage, the classification hearing, largely depends on SORB’s interpretation of its guidelines. This interpretation leaves much room for subjectivity, as there is no overarching objective standard from which the hearing officer must operate. This makes it difficult for a court to perform an objective review of the hearing officer’s classification.
Such is not the case for all risk-based classification systems.[4] New Jersey’s legislature enacted N.J.S.A. §2C:7-8, which required the Office of the Attorney General to develop guidelines for the classification of sexual offenders. Separately, New Jersey’s law, like its Massachusetts’ counterpart, listed factors relevant to the risk of reoffense. N.J.S.A. §2C:7-8(b). In implementing the legislature’s mandate for guidelines, New Jersey’s Office of the Attorney General created a detailed risk assessment criteria. See Attorney General Guidelines for Law Enforcement for the Implementation of Sex Offender Registration and Community Notification Laws, June 1998, rev’d February 2007. The criteria took the factors and divided them up into sub-factors.[5] Each sub-factor received a score. Based on the cumulative scores, offenders were given a low, moderate, or high ranking. Though New Jersey’s risk-based classification system still has elements of subjectivity, the system largely rests on these objective factors.
Some experts have also used the Static-99 Sex Offender Risk Assessment an objective basis for assessing the risk of recidivism. The Static-99 measures ten static or unchanging factors that are known to be related to sex offender recidivism, and is a frequently used “actuarial tool.” United States v. Shields, 597 F.Sup.2d 224, 237 (D.Mass. 2009). Experts also widely utilize RRASOR (Rapid Risk Assessment For Sexual Offense Recidivism), which consists of four items and is also generally accepted in the field. Id.
Indeed, as mentioned above, Massachusetts’ legislature did not mandate that SORB utilize a specific scoring system when it assigned SORB the responsibility of classifying the risk level of sexual offenders. See John Doe, Sex Offender Registry Bd. No. 3844 v. Sex Offender Registry Bd., 447 Mass. 768, 777 (2006). *635 SORB possessed the discretion to adopt a quantifiable standard or a descriptive standard for the assessment of an offender’s risk level. See Commonwealth v. Boucher, 438 Mass. 274, 275-81 (2002) (the court adopted a descriptive criteria for determining “sexual dangerousness”). The legislature, though, mandated that SORB develop guidelines that serve as objective standards governing an agency’s actions. See Doe No. 205614, 466 Mass. at 609 (noting that SORB was taxed with promulgating guidelines based on objective facts and data, but that such guidelines have not been updated in a number of years and do not reflect the current knowledge of sexual recidivism). “Such [classification] determinations must be grounded in a corpus of objective facts and data . . .” Id.; see John Doe, Sex Offender Registry Bd. No. 291554 v. Sex Offender Registry Bd., 87 Mass.App.Ct. 210, 216 (2015) (Wblohojian, J., dissenting) (“There must, however, be an objective, quantitative basis for the particular classification”). As observed by Justice Wolohojian in her dissent, “[o]therwise, if we allow the terms ’’low," “moderate,” and “high” to become separated from their quantitative core, a person could be classified as a level three (high risk) sex offender regardless of whether he presents a five percent risk of committing another sex offense or a sevenly-five percent risk." Id.
“The use of the classification worksheet and the assignment of a numerical value based on individualized determinations reflect an objective classification process in the initial classification stage.” Doe No. 3844, 447 Mass. at 777. This presumably objective assessment instrument slips out of the procedure in the second stage of the classification decision. In the pending case, the hearing examiner declined to utilize the Classification Worksheet[6] as a presumptive standard. Using a Classification Worksheet to identify a presumptive classification would promote objective analysis in classifying offenders as a moderate risk as compared to high risk or a low risk.
Karl Hanson, in his 2004 article, Sex Offender Recidivism: A Simple Question, makes this point. He states that use of accredited characteristics in determining recidivism risk will allow for a fact finder “to differentiate between offenders whose five year recidivism rate was 5% from those whose recidivism rate was 25%.” Id. at 11.
The factors identified by Hanson, as related to the increased risk of recidivism, consist of: (A) male victims; (B) prior sexual offenses; and, (C) young age. Id. None of those characteristics apply to Doe in the pending case. He was not young when he committed his first sexual offense; he did not commit the offense against a male victim; and, his sexual offenses involved one incident in which the two sexual crimes occurred. Thus, it must be reasonably doubted that the system adopted by SORB provides a reasonable explanation of why Doe poses a high recidivism risk.
SORB’s failure to provide ascertainable standards governing the definition of recidivism risk levels forces judges to guess at what differentiates a moderate risk of recidivism from a high or low risk of recidivism. The judge must function blindly. The judge lacks any capacity to determine under what objective criteria the hearing examiner differentiated Doe as a high risk offender from another offender classified as having a moderate risk of recidivism or a low risk of recidivism.
This lack of objectivfiy has led to sweeping inconsistency between various SORB classifications. For example, in John Doe, Sex Offender Registry Bd. No. 1211 v. Sex Offender Registry Bd., 447 Mass. 750, 750-51 (2006), Doe 1211, who pleaded guilty to two counts of indecent assault and battery on a child under the age of fourteen, was classified as a level 1 offender. Doe 121 l’s two convictions arose out of separate incidents. Id. at 763. Doe 121 l’s facts presented two factors indexed as demonstrating a high risk of recidivism. Id. Doe 68549, who repeatedly sexually assaulted and raped his two cousins and pleaded guilty to a number of sexual offenses, received an initial recommended classification level 2, which was eventually reduced to level 1. Doe No. 68549. 470 Mass. at 103. This court struggles to understand how Doe’s risk of recidivism is objectively greater than Doe 1211 or Doe 68549 such that he was classified as a level 3 whereas they were not.
If unable to understand the basis for determining a high risk of recidivism from a moderate risk of recidivism, the judge cannot ensure that an accurate classification decision has occurred. Thus, a court cannot perform its duty to determine whether the decision rested on substantial evidence or constituted an abuse or amounted to a arbitrary or capricious decision. G.L.c. 30k, §14(7). The absence of guidelines distinguishing the three classification levels compromises a judge’s ability to engage in “careful and individualized due process [as] necessary to sort sexual predators likely to repeat their crimes from large numbers of offenders who pose no danger to the public ...” Doe No. 205614, 466 Mass. at 596. Overall, there is no objective means from which a judge can ascertain whether SORB’s decision was arbitrary and capricious, or, in fact, lawful.[7]
A second basis for withholding deference for the SORB’s regulatory system lies in the SORB’s lack of expertise. Expertise in predicting a sexual offender’s recidivism risk requires a reliable methodology. See Commonwealth v. Canavan, 419 Mass. 15, 24 (1994) (the court observed that the “ultimate test... is the reliability of the theory or process underlying the expert’s testimony”). A reliable methodology may be demonstrated “by showing that the underlying scientific theory is generally accepted within the relevant scientific community, or by showing that the theory is reliable or valid through other means. ” Commonwealth v. Sands, 424 Mass. 184, 185 (1997).
*636 The record fails to show that the regulations established a reliable methodology for assessing sexual offenders’ recidivism risk. Neither SORB nor its agents rely on a methodology for assessing recidivism that derives from reliable, objective criteria. A methodology divorced from objective guidelines fails to constitute a valid risk assessment instrument.
Expert opinion must rest on both a reliable methodology and a methodology that draws upon a reliable body of information. SORB relies on facts filtered through “factors” determined to be incomplete and stale. See Doe No. 68549, 470 Mass. at 112-14 (“We have cautioned that guidelines that fail to heed growing scientific consensus in an area may undercut the individualized nature of the hearing to which a sex offender is entitled, an important due process right” (internal quotation omitted)).
The absence of an ascertainable and reliable standard for determining an offender’s appropriate classification can be remedied. Articles and studies on sexual recidivism rates can be the source of quantifiable or descriptive criteria or presumptive risk instrument ratings for determining the risk of recidivism. Indeed, SORB already uses an objective scoring system when it initially classifies offenders. Obviously, it trusts the objective factors contained in its Classification Worksheet when making an initial classification determination.
SORB can likewise systematically cure its incomplete and outdated “factors” relevant to recidivism risk. Under SORB’s guidance, staff could, on a periodic basis, review accredited literature for new findings on offender’s risk of recidivism. Where persuaded, SORB could revise the factors and guidelines.
Filling in this gap in the second stage of the classification decision process will honor the legislative mandate that guidelines be promulgated on the risk of recidivism. Such a system is fundamentally necessary to preventing guesswork and speculation from serving as the fulcrum for review of the agency’s classification decisions.
The pending case illustrates the arbitrary decision-making process. In determining that Doe represented a high risk of recidivism the hearing examiner listed the following factors: (1) child victim; (2) number of non-sexual crimes; (3) the extra-familial relationship of the victim to the offender; and, (4) the offender’s commission of the offense in a public place. He also noted that Doe had a decreased risk due to his positive adjustment to incarceration, and the presence of social supports, including family and employment.
But the hearing examiner never expressed how he came to differentiate Doe as a high risk of recidivism from a moderate or low risk. He never cited an article or study that suggested or established that the coterie of risk factors he cited actually demonstrated that Doe’s recidivism risk amounted to a high risk. The court was left in the dark on whether Doe posed a ninety percent recidivism risk, or a two percent recidivism risk. The hearing examiner’s subjective conclusion is bereft of an explanation as to how Doe fit a high risk, and what reliable “factors” alone or in combination supported the prediction. As stated by Justice Wolohojian, “(w)e are left to guess what predictive value of the characteristics of Doe’s acts (while serious) might have on the quantum of risk Doe presents in the future.”[8] Doe No. 291554, 87 Mass.App.Ct. at 217.
In this decision and in all hearing decisions, SORB styles its decision-making process as a “quality assessment.” This conceit conceals SORB’s reliance on subjective assessments that run the strong and clear risk of springing from the hearing examiner’s personal preferences and beliefs. Such a risk presents an unacceptable risk of arbitrary judgments. Arbitrary judgments injure the public interest and the substantial interests of sexual offenders, often people of little social standing.
This court does not mean for SORB to interpret this decision as an order to modify its classification procedure to one that reflects a Static-99 or New Jersey’s scoring format. Indeed, this court is optimistic that SORB will take this opportunity to revisit its classification procedure in order to adopt a more objective standard over which courts may conduct a meaningful review of SORB’s classification decisions.
ORDER
Based on the above, the court REVERSES SORB’s decision classifying Doe as a level 3 sexual offender. It is ORDERED based on the above record that Doe’s classification not exceed a level 1 classification until such time as SORB presents reasons for altering that classification.

 Alevel 2 or 3 classification compromises the sexual offender’s substantial interests. See John Rawis, Justice as Fairness; a Restatement, 58 (2001).

 This court is aware that the Supreme Judicial Court is now soliciting amici briefs for SJC-11823, John Doe, Sex Offender Registry Bd. No 38016 v. Sex Offender Registry Bd., regarding whether SORB should be constitutionally required to prove an offender’s risk classification level by clear and convincing evidence, rather than by a preponderance of the evidence.

 These factors, promulgated at G.L.c. 6, §178K(l)(a)(i)-(vi) are:
(1) whether the sex offender has a mental abnormality;
(ii) whether the sex offenders conduct is characterized by repetitive and compulsive behavior;
(iii) whether the sex offender was an adult who committed a sex offense on a child;
(iv) the age of the sex offender at the time of the commission of the first sex offense;
(v) whether the sex offender has been adjudicated to be a sexually dangerous person pursuant to section 14 of chapter 123A or is a person released from civil commitment pursuant to section 9 of said chapter 123A; and
(vi) whether the sex offender served the maximum term of incarceration.

 There are two main types of sexual offender level classification systems. The most popular is offense-based, under which each sex offense is designated a level and the offender is classified accordingly. Other states, including Massachusetts, have instituted a risk-based classification system, and designate the sex offenders according to the risk of recidivism. See generally Hamilton, 83 Temp. L. Rev. at 706-07 & n.52.

 The division of general factors into sub-factors resembles Massachusetts Sentencing Guidelines.

 The Classification Worksheet is a part of the record.

 The absence of effective judicial oversight over the accuracy of classification decisions presents a risk to both offenders and to victims. Inaccurate assessments may be over-inclusive or under-inclusive of level 3 and level 1 classifications alike.

 Additionally, the hearing officer withheld the weights and measures that he presumably relied upon to differentiate Doe from a level 2 or level 1 sexual offender, This failure to explain the path of logic that produced the level 3 decision amounted to an unreasonable refusal to explain SORB’s exercise of authority that implicated Doe’s substantial interests.