NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1122

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 2534

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, John Doe No. 2534, appeals from a Superior Court judgment affirming his classification by the Sex Offender Registry Board (board) as a level three sex offender and the board's denial of his motion for expert funds.

Background.  Between 1985 and 1991, Doe routinely sexually abused his stepdaughter (victim 1).  Victim 1 reported that the abuse began when she was six or seven years old.  "[T]wice a week or more," Doe would get on top of victim 1 while she was sleeping, rub his penis on her vagina and buttocks over her clothing, and touch her breasts.  Victim 1 reported the abuse to police when she was sixteen years old.  She stated that Doe was "high on cocaine," which he used every night, when he abused

her.  In 1996, Doe pleaded guilty to four counts of indecent assault and battery on a child.  He received concurrent one-year sentences suspended with two years of probation.  In 1999, Doe's probation was revoked based on new child sexual assault offenses and he was incarcerated for one year.

In 1999, Doe impregnated his girlfriend's ten year old daughter (victim 2).  Doe repeatedly raped victim 2 vaginally beginning when she was seven or eight years old and ending when her pregnancy was discovered.  In 2001, Doe pleaded guilty to four of counts of forcible rape of a child.  He was sentenced to concurrent twenty-five to twenty-seven year State prison sentences.

In 2020, the board notified Doe of his duty to register, preliminarily classifying him as a level three sex offender.  Doe, who was still incarcerated, requested a hearing to challenge the preliminary classification.  In 2022, after a hearing, the hearing examiner finally classified Doe as a level three sex offender.

Discussion.  1.  Classification determination.  When reviewing a classification decision by the board, we "must determine whether the decision is supported by substantial evidence" (citation omitted).  Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 632 (2011).  "A hearing examiner has discretion . . . to consider

which statutory and regulatory factors are applicable and how much weight to ascribe to each factor." Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 109-110 (2014) (Doe No. 68549). "'Substantial evidence' is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. at 109, quoting G. L. c. 30A, § 1 (6). Classifying an offender as level three requires the hearing examiner to determine by clear and convincing evidence that "'the risk of reoffense is high and the degree of dangerousness posed to the public is such that a substantial public safety interest is served by active dissemination' of the offender's registration information." Doe, Sex Offender Registry Bd. No. 6729 v. Sex Offender Registry Bd., 490 Mass. 759, 768 (2022), quoting G. L. c. 6, § 178K (2) (c).

The hearing examiner found that several high-risk and risk-elevating factors applied. Because Doe was convicted of sexually assaulting his prepubescent stepdaughter and then later, on multiple occasions, forcibly raping his girlfriend's prepubescent daughter, the hearing examiner found that high-risk factor 2 (repetitive and compulsive behavior) and factor 3 (adult offender and child victim) applied with "full weight." See 803 Code Mass. Regs. § 1.33(2)(a), (3)(a) (2016). Based on a determination that Doe's forcible rapes of victim 2 included penile penetration, the hearing examiner applied factor 19

3

(level of physical contact) with "increased weight." See 803 Code Mass. Regs. § 1.33(19)(a). The hearing examiner also found that Doe sexually assaulted his victims in bedrooms where their siblings were sleeping and applied factor 16 (public place). 803 Code Mass. Regs. § 1.33(16)(a). The hearing examiner applied factor 22 (number of victims) because Doe sexually assaulted two different victims. 803 Code Mass. Regs. § 1.33(22)(a).

Based on Doe's criminal history, the hearing examiner applied factor 10 (contact with the criminal justice system) and factor 11 (violence unrelated to sexual assaults) with moderate aggravating weight because Doe's last nonsexual criminal arraignment occurred over thirty years prior to the hearing.[1] 803 Code Mass. Regs. § 1.33(10)(a), (11)(a). The hearing examiner determined that Doe's commission of sex offenses against victim 2 while on probation for his previous sex offenses against victim 1 supported the application of factor 13 (noncompliance with community supervision). 803 Code Mass. Regs. § (13)(a). The hearing examiner applied factor 9 (alcohol and substance abuse) with full aggravating weight based on evidence that Doe had a history of substance use issues and that

---

[1] Doe argues, for the first time on appeal, that the hearing examiner misapplied factor 10. Although the argument was waived, we nevertheless discern no error in the hearing examiner's application of factor 10.

4

his use of cocaine contributed to his sex offenses.  803 Code Mass. Regs. § 1.33(9)(a).  Because Doe only briefly engaged in sex offender treatment in 1997 and later refused to participate in treatment, the hearing examiner applied risk-elevating factor 24 (less than satisfactory participation in sex offender treatment).  803 Code Mass. Regs. § 1.33(24)(a).

The hearing examiner found that several risk-mitigating factors applied as well.  The hearing examiner gave Doe, who was sixty-seven years old, full mitigating weight under factor 30 (advanced age).  803 Code Mass. Regs. § 1.33(30)(a).  The hearing examiner also credited Doe for his programming while incarcerated but applied factor 34 (material submitted by the offender regarding stability in the community) with minimal mitigating weight because Doe had stated he would be homeless on release from incarceration.  803 Code Mass. Regs. § 1.33(34)(a). The hearing examiner applied factor 31 (physical condition) with minimal mitigating weight, finding that Doe's medical issues would not prevent him from touching or raping another prepubescent child.  803 Code Mass. Regs. § 1.33(31)(a). Finally, the examiner applied factor 32 (sex offender treatment) with minimal mitigating weight because Doe presented no evidence of progress after his 1997 sex offender treatment.  803 Code Mass. Regs. § 1.33(32)(a).

5

Based on a careful weighing of the applicable factors, the hearing examiner found that Doe posed a high risk of reoffense and a high degree of danger. The evidence supported each of the hearing examiner's findings and conclusions concerning the high-risk, risk-elevating, and risk-mitigating factors. The weight to be assigned to those factors was within the hearing examiner's discretion and is entitled to deference. See Doe No. 68549, 470 Mass. at 109-110; Doe, Sex Offender Registry Bd. No. 291554 v. Sex Offender Registry Bd., 87 Mass. App. Ct. 210, 212 (2015). We conclude that the hearing examiner did not abuse his discretion by classifying Doe as a level three sex offender.[2] See Doe, Sex Offender Registry Bd. No. 3974 v. Sex Offender Registry Bd., 457 Mass. 53, 62 (2010) ("there is nothing in the statute or regulations that requires the board to treat mitigating conditions of release as superseding other aggravating factors").

2. Internet publication. "Internet publication depends not only on the probability of reoffense and the danger posed by that potential reoffense, but also on the efficacy of online publication in protecting the public from being victimized by

---

[2] For the first time on appeal, Doe contends that the hearing examiner erred by mechanically applying the regulatory factors. Although the argument is waived, we see no error in the hearing examiner's careful application of the factors to Doe's specific case.

6

the offender."  Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass. 643, 654 (2019) (Doe No. 496501).  "Internet publication will almost invariably serve a public safety interest by notifying potential victims of the risks presented by the offender in their geographic area."  Id. at 655.  The examiner is required "to ask whether, in light of the particular risks posed by the particular offender, Internet access to that offender's information might realistically serve to protect the public against the risk of the offender's sexual reoffense."  Id.

Doe argues that public dissemination of his registration information does not serve a public safety interest because both victims were "intrafamilial."[3]  He asserts that he sexually assaulted only daughters of dating partners, and "[t]here was no evidence that [he] was going to or would likely engage in a [future] dating relationship."  Factor 7 (relationship between offender and victim) defines intrafamilial victims to include "[a]ny persons who are family member substitutes . . . who lived in the same household with the offender for two or more years prior to the offending behavior."  803 Code Mass. Regs. § 1.33(7)(a)(1)(d).  Here, Doe told police that he lived in victim 2's household for three months.  Thus, the hearing

_____

[3] Although Doe raises this argument for the first time on appeal, we nonetheless address it.

7

examiner was not required to find that Doe limited his sex offenses to intrafamilial victims. Nor was the hearing examiner required to risk the safety of potential child victims on speculation relative to Doe's future dating prospects. Moreover, the risk of reoffense against victims outside Doe's family was not only the basis for the hearing officer's determination that Internet publication was required. The hearing examiner also found that Doe "could not comply with probation conditions nor was he deterred by legal consequences, civil commitment, or his advanced age," and cited Doe's failure to fully engage in sex offender treatment. We discern no abuse of discretion in the hearing examiner's conclusion that Internet dissemination of Doe's registry information was necessary to protect the public against the risk of Doe's reoffending. See Doe No. 496501, 482 Mass. at 655.

3. Denial of expert funds. "The hearing examiner . . . has discretion to deny expert funds to indigent sex offenders who offer expert opinion on factors that the board's regulations already require the hearing examiner to consider." Doe, Sex Offender Registry Bd. No. 234076 v. Sex Offender Registry Bd., 484 Mass. 666, 670 (2020) (Doe No. 234076).

> "When moving for expert funds, indigent sex offenders must 'identify and articulate the reason or reasons, connected to a condition or circumstance special to [them],' and, separately, 'general motion[s] for funds to retain an expert to provide an opinion on the sex offender's risk of

reoffense, without more, would . . . be insufficient'"
(citation omitted).

Id. The articulated purpose must "assist[] the hearing examiner in analyzing the factors" that bear on sexual recidivism. Doe, Sex Offender Registry Bd. No. 15606 v. Sex Offender Registry Bd., 452 Mass. 784, 794 (2008).

Doe asserts that the examiner abused his discretion by denying Doe's motion for funds to hire an expert to opine about the effects of his health and age on his risk of reoffense. According to Doe's motion, he suffered "serious medical conditions including a heart condition and diabetes." We agree with the hearing examiner that Doe "[did] not explain how the medical condition or circumstance special to him [wa]s connected to his risk of reoffense or level of dangerousness," and that Doe's health and age concerns would be addressed by factor 30 (advanced age) and factor 31 (physical condition). See Doe, Sex Offender Registry Bd. No. 27914 v. Sex Offender Registry Bd., 81 Mass. App. Ct. 610, 617 (2012). Moreover, the medical records Doe submitted at the hearing identified his health issues but did not state that he suffered any physical limitations from them. Thus, the examiner did not abuse his discretion by concluding that Doe did not articulate a reason, connected to a circumstance specific to Doe, that the motion for expert funds

9

would have assisted the examiner in analyzing Doe's likelihood to reoffend sexually.  See Doe No. 234076, 484 Mass. at 670.

Judgment affirmed.

By the Court (Singh, Grant & Brennan, JJ.[4]),

Clerk

Entered:  April 10, 2025.

---

[4] The panelists are listed in order of seniority.