NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

21-P-1093

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 1712[1]

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, John Doe, appeals from a judgment of the Superior Court affirming the Sex Offender Registry Board's (SORB's) final decision reclassifying him from a level three sex offender to a level two sex offender.  He argues that the hearing examiner failed to ascribe a specific weight to eight risk factors, lacked sufficient evidence to support his reclassification decision, and, because of that insufficiency of evidence, violated his constitutional rights by ordering the public dissemination of his sex offender registration information.  We affirm.

---

[1] As is our custom, in appeals from classification decisions under G. L. c. 6, § 178M, we refer to the plaintiff using the pseudonym "John Doe" notwithstanding that, throughout these proceedings, the plaintiff has referred to himself using the pseudonym "H.T."

Background. We recite the portions of the hearing examiner's findings that are relevant to our discussion.

1. First victim. On October 26, 1991, a fifteen year old girl reported to Chicopee Police that during the previous month she and the plaintiff, then twenty-six years old, had sexual intercourse on two occasions in a parking lot. On October 21, 1992, the plaintiff pleaded guilty in Hampden Superior Court to two counts of rape and abuse of a child. See G. L. c. 265, § 23.

2. Second victim. On June 5, 1998, a thirteen year old girl (Victim #2) reported to Springfield Police that the plaintiff had sexually assaulted her on three separate occasions. First, in July or August of 1997, Victim #2 and her brother were sleeping over in a spare bedroom in the plaintiff's home. Victim #2 woke up to the plaintiff touching her breasts and her vagina. She told him to stop, but he said that if she screamed, he would get the Latin Kings, a gang, to hurt her. He then covered her mouth and put his fingers in her vagina. Upon hearing his wife moving around, the plaintiff left but told Victim #2 that he would be back. Victim #2 reported that, a "little while later," the plaintiff came back and put his finger back inside of her for about twenty minutes. Before leaving, he told Victim #2 to remember what he had said about the Latin Kings.

2

Next, in October of 1997, Victim #2 went out with the plaintiff for ice cream. But instead of taking Victim #2 for ice cream, the plaintiff drove her to a field she did not recognize and proceeded to touch her breasts and put his finger inside of her for forty-five minutes.

Finally, in March or April of 1998, Victim #2 returned to the plaintiff's home for a sleepover with his daughter and another friend. She awoke to the plaintiff with his hands on her breast and his finger inside of her vagina.

The plaintiff was indicted on three counts of forcible rape of a child and two counts of indecent assault and battery of a child under fourteen. On June 28, 1999, the plaintiff pleaded guilty in Superior Court to one count of indecent assault and battery on a child under fourteen. See G. L. c. 265, § 13B. The hearing examiner concluded that, despite the plaintiff's "pleading to a lesser charge," Victim #2's statements were "sufficiently detailed and that [the plaintiff] did in fact digitally penetrate her vagina."

3. Third victim. On May 18, 1998, a fourteen year old girl (Victim #3) reported to Springfield Police that the plaintiff had sexually assaulted her on three separate occasions. She reported that sometime in March, she had spent the night at the plaintiff's home, with a friend, because her parents were out of town. The first night, the plaintiff gave

3

her beer and marijuana. Victim #3 and her friend spent the night eating food, watching TV, and talking on the phone. They went to bed in a bedroom together, and slept without blankets because it was hot. Later that night, the plaintiff came into the room, touched Victim #3's thighs, and put his fingers in her vagina for several seconds. Victim #3 repeatedly told the plaintiff to stop. Eventually, he left the room and Victim #3 hid beneath the bed for the rest of the night.

Two or three nights later, Victim #3 smoked some more marijuana with the plaintiff and his girlfriend before going to bed. That night, the plaintiff entered Victim #3's room, pulled down her underwear, got on top of her, and put the head of his penis into her vagina. He eventually got off Victim #3 and ejaculated onto her inner thigh.

Around that same time, the plaintiff again tried to place his finger in the vagina of Victim #3 while he was driving her home in the morning to get ready for school.

The plaintiff was indicted on three counts of forcible rape of a child. The plaintiff pleaded guilty on June 28, 1999, to two counts of a lesser charge of indecent assault and battery on a person over fourteen. See G. L. c. 265, § 13H. Despite the plaintiff's pleading to a lesser charge, the hearing examiner found that Victim #3's statements were sufficiently detailed to

4

conclude that the plaintiff did in fact penetrate her vagina with his penis and finger.

4. Fourth victim. Sometime in April of 1998, while a fifteen year old girl was sleeping over at a friend's house, the plaintiff attempted, several times, to place his hands on her vaginal area. The plaintiff pleaded guilty to one count of indecent assault and battery on a person over fourteen. See G. L. c. 265, § 13H.

5. Fifth victim. On May 3, 1998, while at a sleepover at plaintiff's home, a sixteen year old girl (Victim #5) woke up to the plaintiff touching her body, rubbing her breasts and putting his hand on her buttocks beneath her underwear. He then moved his hand and digitally penetrated her vagina.

The plaintiff was indicted on two counts of indecent assault and battery on a person over fourteen and one count of rape of a child with force. He pleaded guilty to three counts of indecent assault and battery on a person over fourteen and was sentenced to two years of incarceration on each count. The hearing examiner found the victim's statements to be sufficiently detailed to conclude that, despite the plaintiff's pleading to a lesser charge, the plaintiff had in fact digitally penetrated Victim #5.

6. Contact with criminal justice system. In addition to his sexual offenses, the plaintiff has a criminal history of

5

nonsexual offenses beginning in 1987.  He has been arraigned for assault, disorderly conduct, shoplifting, assault and battery by means of a dangerous weapon, motor vehicle-related offenses, substance-related offenses, malicious destruction of property, abuse prevention violations, and threat-related offenses.  Most recently, in 2015, the plaintiff was charged with larceny and breaking and entering in the daytime with intent to commit a felony.  The hearing examiner found that each of these offenses had been disposed of via either "dismissals, fines, nolle prossed, probation, commitments, guilty filed, not guilty, and continued without a finding."  He also found that the plaintiff had no contact with the criminal justice system for more than five years.  Despite that, the hearing examiner concluded that the plaintiff persistently had disregarded rules, laws, and the rights of others.

7. <u>Restraining orders</u>.  The plaintiff was also subject to restraining orders pursuant to G. L. c. 209A from three different women between 1993 and 2008.  One of the women reported, on August 9, 1992, to Springfield police that the plaintiff had called her and told her that when he made bail the next day he would come over to her apartment to kill her.  On September 10, 1992, she reported that the plaintiff had violated the restraining order by calling her several times and approaching her car in a parking lot and opening the door.  In

6

an affidavit signed November 12, 2003, she reported that the plaintiff came to her house, yelled at her, and hit her on the back. She reported in an affidavit signed May 17, 2006, that the plaintiff had called her, threatening to hit her and take her children.

8. Reclassification decision. On December 23, 2002, the Board classified the plaintiff as a level three sex offender. The plaintiff later sought reclassification and a de novo hearing took place on January 26, 2021. At that point, the plaintiff was fifty-three years old and had not sexually reoffended for twenty-two years. The hearing examiner's reclassification decision relied on the application of two high risk factors, nine risk elevating factors, and five mitigating factors, all as set forth in 803 Code Mass. Regs. § 1.33 (2016).

Finding that the plaintiff continued to sexually reoffend after having been convicted of a sexual offense in 1992, the hearing examiner applied factor 2 (repetitive and compulsive behavior), giving it increased weight. The hearing examiner also applied factor 3 (adult offender with child victim), finding that the plaintiff had sexually assaulted at least five teenage girls, all of whom were between the ages of twelve and fifteen.

The examiner also applied nine risk elevating factors because the plaintiff sexually assaulted five (factor

7

22 -- number of victims), sleeping (factor 18 -- extravulnerable victim), extrafamilial victims (factor 7 -- relationship between the offender and victim), with at least some of the assaults taking place where the plaintiff had no expectation of privacy (factor 16 -- public place), and while using his fingers and, for two victims, his penis (factor 19 -- level of physical contact). The plaintiff also exhibited a disregard for the law (factor 10 -- contact with criminal justice system), had a history of violence unrelated to sexual assault (factor 11), did not comply with a restraining order while under supervision (factor 13 -- noncompliance with community supervision), and displayed hostility towards women (factor 15).

The hearing examiner balanced these aggravating factors against several mitigating factors, applying factors 29 (offense-free time in the community) on account of the plaintiff's twenty-plus years of sex offense-free time in the community; factor 30 (advanced age) on account of the plaintiff being fifty-three years old; factor 32 (sex offender treatment) on account of the plaintiff's somewhat satisfactory participation in sex offender treatment; factor 33 (home situation and support systems) on account of the plaintiff's living situation being a positive and supportive environment; and factor 34 (materials submitted by the sex offender regarding stability in the community) on account of the plaintiff having

8

been married for over twenty years with four adult children and having found a job as a machinist.

As a result of this balancing, the examiner concluded that the plaintiff should be reclassified as a level two sex offender.

Discussion. "A reviewing court may set aside or modify SORB's classification decision where it determines that the decision is in excess of SORB's statutory authority or jurisdiction, violates constitutional provisions, is based on an error of law, or is not supported by substantial evidence." Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass. 643, 649 (2019) (Doe No. 496501), citing G. L. c. 30A, § 14 (7). "In reviewing SORB's decisions, we 'give due weight to the experience, technical competence, and specialized knowledge of the agency.'" Doe No. 496501, supra at 649, quoting Doe, Sex Offender Registry Bd. No. 205614 v. Sex Offender Registry Bd., 466 Mass. 594, 602 (2013).

The plaintiff's first argument is that the hearing examiner's decision is not susceptible to review by this court due to the examiner's failure to ascribe a specific weight to eight factors. This level of specificity would certainly aid the court's review of classification decisions and further ensure the integrity of the present sex offender classification system, one that implicates a sex offender's significant

9

"liberty and privacy interests." Doe, Sex Offender Registry Bd. No. 380316 v. Sex Offender Registry Bd., 473 Mass. 297, 311 (2015). However, the plaintiff does not cite to any authority that requires the board to ascribe to each factor a specific weight. The hearing examiner was required to consider a number of discrete, objective factors and did so in a fashion that was not "general and conclusory," as the plaintiff suggests. The examiner's written discussion of each factor included an application of the relevant regulation to the plaintiff's specific, factual background. For example, the plaintiff complains that the examiner's discussion of factor 32 (sex offender treatment) was deficient. But, there, the hearing examiner studiously listed out the criteria relevant to the determination of weight and compared that with the report provided by a licensed independent clinical social worker, who stated that though the plaintiff had attended nine of eleven sex offender treatment group sessions and related well to his peers, he could not fully describe all four phases of the deviant cycle, identify triggers for sexually deviant thoughts, control deviant arousal via behavioral techniques, and did not have a specific and realistic written relapse prevention plan. The examiner noted that, in a treatment status report, the social worker indicated "that for most of the treatment criteria, [the plaintiff's] participation was 'somewhat.'" The discussion of

10

the hearing examiner is not so "general and conclusory" as to evade proper appellate review.

The plaintiff's second argument is that there is insufficient evidence to support the hearing examiner's conclusion that the plaintiff presents a moderate risk to reoffend sexually or that a public safety interest is served by Internet publication of the plaintiff's registry information.

Regarding reoffense, the plaintiff's primary argument is that, according to a certain study (Hanson)[2] cited by SORB as supporting its promulgation of factor 29, see 803 Code Mass. Regs. § 1.33(29)(a) (2016), the plaintiff's risk of reoffense most likely statistically was nonexistent at the time of reclassification.  The Hanson study calculated sexual recidivism over twenty years, using a sample of 7,740 sexual offenders aggregated from twenty-one samples collected in previous studies.  Based on five, ten, and fifteen-year follow-ups, the researchers found that the five-year recidivism rate of high risk offenders dropped from 22% at release, to 8.6% after five years offense-free, to 4.2% after ten years offense-free, which was still higher than the expected rate for nonsexual offenders. The researchers noted that the recidivism rate dropped by "half

---

[2] See Hanson, Harris, Helmus, & Thornton, High-Risk Sex Offenders May Not be High Risk Forever, J. Interps. Violence, 29(15):2792-2813 (2013).

11

for each [five] years that the offender was sexual offense-free in the community," and speculated that high risk sex offenders who remain offense-free could eventually cross a threshold such that their risk of sexual reoffense becomes indistinguishable from the risk presented by nonsexual offenders. Hanson, supra at 2800, 2805.

The plaintiff argues that, extrapolating from the data trend presented in the Hanson study, his particularized risk of reoffense at the time of the 2021 reclassification hearing was "nearly zero." Even assuming that the plaintiff's projection is accurate, acceptance of this argument would require us to treat this one article, and offense-free time in the community, as dispositive of every offender's risk of sexual recidivism. But the article itself cautions that it offers little guidance as to a causal link between "years crime-free and desistance." Hanson, supra at 2805. Indeed, the researchers noted that access to information regarding an offender's "involvement in non-sexual crime" and other background information would provide an evaluator "increased capacity to discriminate recidivists from non-recidivists." Id. at 2806.

The case-by-case approach of the reclassification process, with its consideration of multiple factors, affords a hearing examiner exactly this sort of information. In his analysis, the examiner gave full weight to the plaintiff's offense-free time

12

in the community, but noted that he also needed to consider "risk elevating factors not directly related to the sexual offending," including the plaintiff's involvement in "non-sexual crim[e] . . . some of which may have been violent," his "problems with community supervision," and "demonstrated hostility towards women." We conclude that the hearing examiner, having given full weight to the plaintiff's offense-free time in the community, did not err in choosing to treat this mitigating risk factor as one part of a larger, holistic analysis rather than as the single, dispositive factor.

Regarding Internet dissemination, the plaintiff argues that the examiner's conclusion was unsupported where (1) the plaintiff's risk of reoffense purportedly was zero and (2) the underlying convictions involved known victims within the plaintiff's home or familiar settings. Both arguments are without merit. We have already discussed the first, and need not accept the premise that, contrary to the hearing examiner's conclusion, which is supported by substantial evidence, the plaintiff posed no risk of reoffense. The plaintiff's argument that Internet dissemination would not serve a public safety interest because several of the plaintiff's underlying convictions occurred within his home is untenable. The plaintiff's victims, teenage girls, were extrafamilial. They came for sleepovers with their friends. They came when their

own parents were out of town.  Their guardians did not have notice of the plaintiff's dangerousness.  The determination that public dissemination might aid others who might otherwise be harmed by any reoffense the plaintiff might commit was adequately supported.  As the hearing examiner rightfully observed, based on the plaintiff's past sexual offending behavior, if he "were to reoffend, he would most likely offend against an extrafamilial girl, similar to the five Victims on record. . . .  [G]irls and anyone who is the caretaker of young girls and who may become acquainted with the [plaintiff], ha[ve] a right to know . . . about the [plaintiff's] past sexual offenses."  The examiner properly concluded that Internet dissemination was warranted.

Finally, the plaintiff argues that because the hearing examiner's decision lacked sufficient evidence, his reclassification as a level two sex offender violates his

constitutional rights.  Because we reject his insufficiency argument, this argument fails as well.

Judgment affirmed.

By the Court (Meade, Rubin & Blake, JJ.[3]),

Joseph F. Stanton

Clerk

Entered:  March 24, 2023.

---

[3] The panelists are listed in order of seniority.